```
               UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
                    FORT MYERS DIVISION

STEPHEN MADDRIE,

                    Plaintiff,

vs.                                Case No.  2:06-cv-566-FtM-29DNF

SUSHMA PAREKH

                    Defendant.
_____
```

**OPINION AND ORDER**

This matter comes before the Court upon review of Defendants' Motion for Summary Judgment (Doc. #32; Mot. SJ) and attached exhibits including a copy of Plaintiff's medical records (Doc. #32-2- #32-3; Exhs. A, B) and an affidavit of Dr. Parekh (Doc. #33-4, Exh. C).  Plaintiff filed a Response (Docs. #34; Response) and a "memorandum in support of the Defendant's Motion for Summary Judgment denial" (Doc. #34-2, pp. 16-19; Pl's Memo.).  Plaintiff also attached exhibits to his Response including, an affidavit of himself (Doc. #34-2, pp. 1-3; Pl. Aff.) and portions of his medical record (Doc. #34-2, pp. 4-15).  This matter is ripe for review.

**I.**

Plaintiff, who is proceeding *pro se* and currently in the custody of the Florida Department of Corrections, initiated this action by filing a § 1983 Civil Rights Complaint Form on October 19, 2006.  In compliance with the Court's October 26, 2006 Order (Doc. #6), Plaintiff filed an Amended Civil Rights Complaint Form (Doc. #7, Amended Complaint).  Plaintiff sues Sushma Parekh, who is

a doctor at Moore Haven Correctional Facility ("MHCF"). Plaintiff claims that he has a "lump behind his neck" that causes "pain and stiffness." Amended Complaint at 9.[1] The Amended Complaint alleges that Defendant Parekh acted with deliberate indifference to this medical condition. See generally id. Plaintiff states that despite his "pain and stiffness" from the lump, the doctor "actually forced [Plaintiff] away from the medical department by calling a correctional officer." Id. at 9. As a remedy, Plaintiff seeks $ 150,000 in damages, to be transferred to another institution, and to ensure that he does not incur retaliation for filing this action. Id. at 10.

Defendant Parekh files a Motion for Summary Judgment, arguing that the record presents no question of material fact and as such she is entitled to summary judgment as a matter of law. Mot. SJ at 2, 6. Defendant Parekh states that Plaintiff's "lump" was diagnosed to be a "lipoma." A "lipoma" is "a benign growth of fat cells in a thin, fibrous capsule usually found just below the skin." Id. at 2. Defendant argues that Plaintiff's lipoma does not constitute a "serious medical condition." Id. at 9. Additionally, Defendant refers the Court to Plaintiff's medical record, noting the numerous times the medical department addressed Plaintiff's concerns regarding the lipoma and treated his

---

[1] For citation purposes, when citing to Plaintiff's documents, the Court cites to the number as it appears scanned on the top of the page according to the Court's electronic filing system. Because Defendant's documents are well organized and include bates stamps, the Court cites to the page number on the document or as referenced by the bates stamp, when applicable.

condition. Id. at 2-4. Defendant further notes that it was not until after Plaintiff filed the action *sub judice* that he began complaining more frequently about his neck. Id. at 4. In Response, Plaintiff states that he submitted numerous sick-call slips to see the medical department concerning the lump on the back of his neck. Plaintiff reiterates that on one occasion he was forced out of the medical department by a corrections officer. Response at 1. Plaintiff also argues that his lipoma could be cancer and therefore he requires a "CAT SCAN," but was refused this medical test. Pl's Memo. at 18.

**II.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue at to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317,

323 (1986); <u>Hickson Corp. v. Northern Crossarm Co., Inc.</u>, 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial motion. <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 322; <u>Hilburn v. Murata Elecs. N. Am., Inc.</u>, 181 F.3d 1220, 1225 (11th Cir. 1999). In ruling on a motion for summary judgment, if there is a conflict in the evidence the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. <u>Shotz v. City of Plantation, Fl.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). Conclusory allegations based on subjective beliefs, however, are insufficient to create a genuine issue of material fact. <u>Leigh v. Warner Bros., Inc.</u>, 212 F.3d 1210, 1217 (11th Cir. 2000). In the summary judgment context, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney. <u>Loren v. Sasser</u>, 309 F.3d 1296, 1301 (11th Cir. 2002).

**III.**

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges,

or immunities secured by the Constitution and laws." To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) Defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under the color of state law. <u>Arrington v. Cobb County</u>, 139 F.3d 865, 872 (11th Cir. 1998); <u>U.S. Steel, LLC v. Tieco, Inc.</u>, 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, Plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. <u>Marsh</u>, 268 F.3d at 1059; <u>Swint v. City of Wadley</u>, 51 F.3d 988 (11th Cir. 1995); <u>Tittle v. Jefferson County Comm'n</u>, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994). Here, the Complaint alleges an Eighth Amendment claim and the parties do not dispute that the Defendant is a state actor.

The Eighth Amendment prohibits the unnecessary and wanton infliction of pain. U.S. Amend. VIII; <u>Estelle v. Gamble</u>, 429 U.S. 97, 105 (1976). "[D]eliberate indifference to [the] serious medical needs of [a] prisoner [ ] constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003)(quoting <u>Estelle</u>, 429 U.S. at 104); <u>Campbell v. Sikes</u>, 169 F.3d 1353 (11th Cir. 1999). In order to state a claim for a violation under the Eighth Amendment, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle</u>, 429 U.S. at 106.

This showing requires a plaintiff to satisfy an objective and a subjective inquiry. Farrow, 320 F.3d at 1243 (citing Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000)).

A plaintiff must first show that he had an "objectively serious medical need." Id. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (citations omitted). "The medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id. Second, a plaintiff must establish that a defendant acted with "deliberate indifference" by showing both a: (1) subjective knowledge of a risk of serious harm (i.e., both awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and the actual drawing of the inference); and (2) disregard of that risk; and (3) conduct that is more than gross negligence. Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005). "Whether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Goebert v. Lee County, 510 F.3d 1312, 1327 (11th Cir. 2007). Inadvertence or mere negligence in failing to provide adequate medical care does not rise to a constitutional violation. Farrow, 320 F.3d at 1243. Rather,

"medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)).

The Supreme Court has concluded that decisions such as whether an x-ray, additional diagnostic techniques, or other forms of treatment are indicated are "[c]lassic example[s] of matters for medical judgment." Estelle, 429 U.S. at 107. The course of treatment chosen by a medical official would appear to be such "a classic example of a matter for medical judgement." See Estelle, 429 U.S. at 107. Thus, no constitutional violation exists where an inmate and a prison medical official merely disagree as to the proper course of medical treatment. See Harris, 941 F.2d at 1505.

**IV.**

The record before the Court does not support a finding that a lipoma constitutes an objectively serious medical condition. Dr. Parekh states that Plaintiff's lipoma[2] is a "non-serious medical condition that can occur almost anywhere in the body." Mot SJ at

---

[2] Dr. Parekh testified that lipomas "can occur almost anywhere in the body, but is found most often in the neck. A lipoma is the most common **noncancerous** soft tissue growth. It can usually be diagnosed by appearance alone and it generally does not require treatment. Lipomas are generally small and are usually moveable and have a soft, rubbery consistency. They usually grow very slow or remain the same size over the years. A lipoma may be surgically removed if symptoms develop, such as if the lipoma: (1) becomes painful or tender; (2) becomes infects; (3) becomes inflamed; (4) drains a foul-smelling discharge; (5) interferes with mobility or function; (6) increases in size; (7) becomes unsightly or bothersome." See Exh. C at 2.

9; Exh. C at 3. Plaintiff alleges that he experienced pain and stiffness from the lipoma and files a "sworn statement" that he "still suffering from pain and stiffness from the lump behind his neck." Doc. #34-2 at 1. Other than Plaintiff's statements, Plaintiff presents no evidence to dispute the Defendant's evidence that a lipoma does not constitute an objectively serious medical need. At least one court has recognized that a lipoma is rarely a serious medical condition. See Glaze v. Hall, Case No. CV 304-64, 2006 WL 360643 *4 (S.D. GA 2006)(referring to the "webmd" internet site and noting "[t]he condition is rarely serious and does not cause pain"); see also Flores w. Wellborn, 119 Fed. Appx. 6, 7 (7th Cir. 2004)(referring to doctor's affidavit that lipoma could not be source of plaintiff's pain because a lipoma contains no nervous tissue). Based on the record before the Court, the Court finds that the evidence establishes that Plaintiff's lipoma does not constitute a serious medical condition.

Assuming *arguendo*, that Plaintiff's medical condition constitutes an objectively serious medical need, the Court finds that the record establishes that Defendant Parekh did not act with deliberate indifference to Plaintiff's condition. According to the record, Plaintiff first complained of the "lump behind his neck" on January 11, 2005. Mot SJ at 1; Exh. A at 22. From January 13, 2005, thru September 18, 2007, the medical staff at MHCF, including Defendant Parekh, evaluated and treated Plaintiff on numerous occasions concerning the lipoma, see Mot SJ; Exh. C; Exh. A. The

following dates represent Plaintiff's visits with the medical department (prior to the date Plaintiff initiated the action *sub judice*):

> January 12, 2005: Plaintiff was a "no-show" to the medical department concerning his January 11 sick-call slip regarding a "lump." Mot SJ at 1; Exh. B at 63.
>
> January 13, 2005: Plaintiff saw Nurse Kincaid, stating that he noticed the "lump," about the size of a grape, 2 weeks before. Mot SJ at 2; Exh. B at 64.
>
> January 14, 2005: Plaintiff saw Dr. Parekh for the "lump" behind his neck and was diagnosed with a lipoma. Mot SJ at 2; Exh. C at 8. Dr. Parekh explained the diagnosis to Plaintiff and further explained that if the lipoma changes size or appearance, to contact her. Mot SJ at 2-3; Exh. B at 65.
>
> January 24, 2005: Plaintiff complained of pain and stiffness at the lipoma and saw Nurse Roberts. The nurse noted neither signs of infection, nor an increase in the size of the lipoma. Mot SJ at 3; Exh A at 24.
>
> February 3, 2005: Plaintiff saw Dr. Parekh regarding the lipoma. Dr. Parekh examined Plaintiff and noted no change from the previous examination conducted on January 14. Parekh provided reassurance to Plaintiff regarding the lipoma and prescribed Tylenol for Plaintiff's complaints of pain. Mot SJ at 3; Exh. B at 68.
>
> April 11, 2005: Plaintiff was a "no-show" to the medical department after submitting a slip-call slip regarding his lipoma. Mot SJ at 3; Exh. B at 71.
>
> April 17, 2005: Plaintiff expressed concern to the medical department that his lipoma was "getting worse." Nurse Anderson evaluated Plaintiff's lipoma and noted that the lipoma was "palpable and moved easily." Mot SJ at 3; Exh. B at 71.
>
> April 20, 2005: Plaintiff complained that the lipoma was "bothering" him. Dr. Parekh examined Plaintiff and noted that the lipoma was still one-inch in diameter and appeared the same at his February 3 examination. Id.

> September 21, 2006: Plaintiff was a "no-show" in the medical department after submitting grievances on September 18 and 20, 2006, concerning the pain in his lipoma. Mot SJ at 4; Exh. B at 88.
>
> November 20, 2006: Plaintiff complained of "great pain" in lipoma and was evaluated by Nurse Carter, who noted the lipoma had not changed size. The lipoma had no scabs or drainage. Mot SJ at 4; Exh. B at 97.
>
> November 22, 2006: Dr. Parekh examined Plaintiff and found the lipoma appeared the same as prior appointments. Parekh noted Plaintiff had no range of movement restriction and did not have tenderness at the lipoma. Mot SJ at 4; Exh. B at 98.
>
> November 23, 2006: Plaintiff complained of pain at the lipoma and was provided with Tylenol for pain. Mot SJ at 4; Exh. B at 99.
>
> December 13, 2006: Plaintiff complained of pain at the lipoma and was evaluated by Nurse Lashway. The nurse found Plaintiff had unlimited range of motion in his neck, but provided Plaintiff with 400 mg of Ibuprofen for the Plaintiff's complaints of pain. Mot SJ at 4; Exh. B at 100.

The record establishes that the MHCF medical department, including Defendant Parekh, responded to Plaintiff's concerns regarding his lipoma and evaluated Plaintiff's condition on numerous occasions. The medical department maintained detailed entries of Plaintiff's complaints concerning the lipoma and details regarding how the medical department treated Plaintiff's condition. According to the records, when deemed appropriate, the medical department provided Plaintiff with pain medicine, including Tylenol and Ibuprofen. Defendant Parekh also repeatedly examined the lipoma and provided reassurances to Plaintiff about his condition. Based on the record, it appears Plaintiff's complaints stem from a

disagreement with Dr. Parekh's medical opinion. In particular, Plaintiff thought the lipoma required surgery and on certain occasions he requested "stronger" pain medicine. See Mot SJ at 3; Exh. B at 66, 68. Plaintiff further argues in his Response that the doctor refused to provide Plaintiff with a "CAT SCAN," which he believed his condition required. Pl's Memo. at 18. Plaintiff's statements illustrate a "classic example" of a matter for medical judgment"; and, as previously noted a disagreement with the medical attention provided does not arise to deliberate indifference. Estelle, 429 U.S. at 107.

ACCORDINGLY, it is hereby

**ORDERED**:

1. Defendant's Motion for Summary Judgment (Doc. #32) is **GRANTED**.

2. The Clerk of Court shall: (1) terminate any pending motions; (2) enter judgment accordingly; and (3) close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this __1st__ day of July, 2008.

JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record